UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

Aaron D. P. Chandler<br>
9813 Tulip Tree Drive<br>
Bowie, MD 20721<br>
<br>
and<br>
David M.T. Chandler<br>
Address<br>
<br>
and<br>
Raymond Hamilton<br>
703 Bright Sun Drive<br>
Bowie, MD 20721<br>
<br>
       Plaintiffs,<br>
      v.<br>
<br>
Gregory Jones,<br>
Third District Station<br>
1620 V St., NW<br>
Washington, D.C. 20009<br>
<br>
and<br>
Anderson<br>
Making Check on April 5, 2007<br>
Third District Station<br>
1620 V St., NW<br>
Washington, D.C. 20009<br>
<br>
and<br>
Brian T. Hollan, OFC 2391. 3D<br>
Third District Station<br>
1620 V St., NW<br>
Washington, D.C. 20009<br>
<br>
and<br>
Carlos Mitchell, OFC 2395. 3D<br>
Third District Station<br>
1620 V St., NW<br>
Washington, D.C. 20009<br>
<br>
and<br>
A. Zabavsky, OFC 2777. 3D

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**RECEIVED**

**AUG 1 6 2010**

Clerk, U.S. District and<br>Bankruptcy Courts

<br>

C.A. No. 10-cv-00903(HHK)<br>
Jury Demanded<br>
Amended Complaint

</td></tr>
</table>

Third District Station )
1620 V St., NW )
Washington, D.C. 20009 )
 )
and )
Robinson NCIC No. 17831 )
Third District Station )
1620 V St., NW )
Washington, D.C. 20009 )
 )
and )
MPD Officer Brian Bradley )
Third District Station )
1620 V St., NW )
Washington, D.C. 20009 )
 )
and )
MPD Officer Robert Stewart )
Third District Station )
1620 V St., NW )
Washington, D.C. 20009 )
 )
and )
MPD Officer Fetting )
Third District Station )
1620 V St., NW )
Washington, D.C. 20009 )
 )
and )
MPD Officer Bunnels )
Third District Station )
1620 V St., NW )
Washington, D.C. 20009 )
 )
and )
MPD Officer Torres )
Third District Station )
1620 V St., NW )
Washington, D.C. 20009 )
 )
 )
and )
JPR, MPD Reviewing Official )
Working on May 31, 2007 )
 )
and )

2

| | |
|---|---|
| **Lieutenant Robert Melan** | ) |
| **MTPD Officer** | ) |
| | ) |
| **and** | ) |
| **Unknown MPD Officers and Staff** | ) |
| | ) |
| **and** | ) |
| **District of Columbia,** | ) |
| **Serve the Following:** | ) |
| **Mayor Adrian M. Fenty** | ) |
| **1350 Pennsylvania Ave., NW, 6th Floor** | ) |
| **Washington, D.C. 20009** | ) |
| | ) |
| **Cathy L. Lanier, Chief of Police** | ) |
| **300 Indiana Ave., NW** | ) |
| **Washington, D.C. 20001** | ) |
| | ) |
| **Defendants** | ) |
| | ) |

## PLAINTIFFS' AMENDED COMPLAINT

### POLICE MISCONDUCT: VIOLATION OF RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES AND THE COMMON AND STATUTORY LAWS OF THE UNITED STATES OF AMERICA AND OF THE DISTRICT OF COLUMBIA GROSS NEGLIGENCE, UNCONSTITUTIONAL STATUTE AND CUSTOMS

**I.**

1.     Aaron Daniel Pushkin Chandler ("Mr. A. Chandler"), David M.T. Chandler ("Mr. D. Chandler") and Raymond Hamilton ("Mr. Hamilton") (collectively "Plaintiffs"), by and thru undersigned counsel, hereby file this complaint.

**II.**

2.     Defendants Gregory Jones, Brian Hollan, Carlos Mitchell, A. Zabavsky, Robert Stewart, Brian Bradley, Fetting, Bunnels, Torres, Robinson, Robert Melan, and certain unknown officers are employees of the Metropolitan Police Department. Defendants are sued in their individual and official capacities.

3.     Defendant District of Columbia is a municipal corporation duly organized and existing

under the laws of the United States. Defendant District of Columbia operates and governs the

Metropolitan Police Department ("MPD") pursuant to the Constitutional laws of the United

States, federal law, and the laws of the District of Columbia. It employs Defendant MPD

Officers.

4.      Defendant Mayor Adrian Fenty is the Chief Executive Officer of Defendant District of

Columbia. Mayor Fenty negligently failed to operate the MPD in compliance with the

Constitutional laws of the United States, federal law, and the laws of the District of Columbia.

Mr. Fenty is sued in his individual capacity and his official capacity.

5.      Defendant Cathy Lanier, MPD Chief of Police and supervisor of the Defendant MPD

Officers, failed to intervene, correct and to properly train, manage, supervise and discipline

Defendant MPD Officers to protect citizens from illegal searches and seizures, illegal arrests,

and prosecution by MPD officers who negligently, knowingly and deliberately with gross

negligence committed unlawful acts which thereby endangered the public health and safety and

the public peace. Ms. Lanier is sued in her individual  capacity and in her official capacity.

Because among other reasons she had the power and the duty to stop the police illegal conduct

many of whom conspired in a three year reign of terror against these Plaintiffs.  She defaulted in

her duty to these Plaintiffs.

6.      Defendant John Doe #1 is an unknown officer of the MPD. Upon information and belief,

he is assigned to the Third District, located at 1620 V Street, N.W., Washington, D.C. 2009.

Officer John Doe #1 is sued in his individual and official capacity.

7.      Defendant John Doe #2 is an unknown officer of the MPD. Upon information and belief,

he is assigned to the Third District, located at 1620 V Street, N.W., Washington, D.C. 2009.

Officer John Doe #2 is sued in his individual and official capacity.

8.      Defendant John Doe or Jane Doe #3 is an unknown MPD officer. Upon information and belief, he or she is assigned to the Third District, located at 1620 V Street, N.W., Washington, D.C. 2009. Officer John Doe or Jane Doe #3 is sued in his or her individual and official capacity.

9.      All named above under this section will be referred to collectively as "Defendants". Defendants are sued in their individual and official capacity.

### III.

10.     This action arises under the United States Constitution, particularly the Fourth and Fifth Amendments and federal law, particularly Title 42 of the United States Code Section 1983, and the laws of the District of Columbia.

### IV.

11.     This Court has jurisdiction to hear this complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (a)(3), 28 U.S.C. § 1343 (a)(4) (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

12.     Venue is appropriately vested in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims herein occurred in the District of Columbia, including the false arrests.

### V.

13.     Each and all of the acts of Defendants alleged herein were done by Defendants, and each of the acts where done under color of law and pretence of the statutes, ordinances, regulations, customs and usages of the government of District of Columbia and under the authority of their office as police officers for such city or transit authority.

14.     Mr. A. Chandler, Mr. D. Chandler and Mr. Hamilton, Plaintiffs herein, are all residents of the state of Maryland and on information and belief, Plaintiffs allege as follows:

## FACTS

15.     Around midnight, on May 31, 2007, Mr. A. Chandler and his friend, Jamitriace Hawkins ("Ms. Hawkins"), after exiting their vehicle, were walking and having a conversation with each other near the intersection of Massachusetts Avenue and DuPont Circle.

16.     While Mr. A. Chandler and Ms. Hawkins were walking, they noticed a police cruiser with flashing lights parked next to their vehicle.

17.     Officers Jones and Mitchell exited their cruiser and approached Mr. A. Chandler and Ms. Hawkins. Officer Jones began accusing, incorrectly, Mr. A. Chandler for driving without a valid permit. Officer Jones also accused Mr. A. Chandler of filing a complaint against him.

18.     After requesting and receiving Mr. A. Chandler's driver license, Officer Jones called in the license to get its status.

19.     Despite Mr. A Chandler and Ms. Hawkins hearing the police dispatcher report over Officer Jones' radio that Mr. A. Chandler's license was valid, Officer Jones proceeded to ask for other officers, including Officers Bradley, Torres and Hollan, to come to the scene.

20.     Officer Jones began to subject Mr. A. Chandler to verbal abuse and intimidating physical gestures, and told Mr. A. Chandler that he knew that he was not allowed to drive in the District of Columbia. Officer Jones' actions were a direct violation of D.C. Mun. Reg. Section 6-A202.1.

21.     Officer Jones also stated that he told Mr. A. Chandler on a previous occasion, not to let him catch him driving in the District of Columbia for six months. At the time of this particular incident, six months had not yet expired.

22.     Although Mr. A. Chandler and Ms. Hawkins repeatedly stated to Officer Jones that Mr. A. Chandler had a valid permit and had done nothing wrong, Officer Jones placed Mr. A. Chandler in handcuffs and loudly announced to his fellow officers, and the large crowd that had

gathered to watch Mr. A. Chandler's public humiliation, that Mr. A. Chandler was being arrested. Officer Jones violated D.C. Mun. Reg. Section 6-A202.1.

23.      During this incident, Ms. Hawkins, a former New York Police Department officer, and at the time, a Metro Transit Police Department ("MTPD") trainee, told Officer Jones that she knew what he was doing was wrong and that she would testify to his misconduct.

24.      After hearing Ms. Hawkins comments, Officer Jones retaliated by telling Ms. Hawkins that he would contact her supervisors at the MTPD.

25.      Mr. A. Chandler was placed under arrest for allegedly driving with a suspended license, and was subsequently transported to the Third District police station by Officer Jones and Officer Mitchell, where he was handcuffed to a chair in the waiting area.

26.      Mr. A. Chandler continuously asked why he had been arrested, and why he was handcuffed to a chair. His questions went unanswered repeatedly.

27.      Shortly after, at 2:50 a.m. on June 1, 2007, Mr. A. Chandler's friend arrived at the station and posted his bond. Although he had been holding his release papers for several hours, Mr. A. Chandler was not released from custody until 7:00 a.m. on June 1, 2007.

28.      Later that evening, Officers Jones and Mitchell met with Ms. Hawkins' MTPD supervisors and urged them to investigate her connection to the Mr. A. Chandler matter.

29.      The officers made false statements to the MTPD supervisors about Mr. A. Chandler and Ms. Hawkins. Furthermore, Officer Jones continued his retaliatory and illegal pattern of activities by providing false testimony at Ms. Hawkins' MTPD hearing regarding her involvement in the said matter.

30.      At the MTPD hearing, in his police report and in his statements to the MTPD supervisors, Officer Jones made untruthful statements that Ms. Hawkins misrepresented herself and that she

allegedly tried to disrupt an ongoing police activity. Officer Jones also stated that Mr. A.

Chandler was a "known criminal with a long history", even though Officer Jones knew that the

prosecutor had refused to prosecute Mr. A. Chandler because it was obvious that the charges

against Mr. A. Chandler were improper and arose solely from the illegal arrest he made.

### Pattern and Timeline of Abuse of Authority by Officer Jones and other Defendants

31.     On April 15, 2007, there was another incident involving Mr. A. Chandler and Officer

Jones. Mr. A. Chandler was talking to Ms. Hawkins on K street N.W., by her car, when they

were approached by Officer Jones.

32.     Although Officer Jones could not have seen Mr. A. Chandler driving his car, he insisted,

in a demeaning and aggressive tone, that Mr. A. Chandler submit to a field sobriety test. Officer

Jones again violated of D.C. Mun. Reg. Section 6-A202.1.

33.     Mr. A. Chandler had done nothing wrong, and because of the long history of harassment

him and his friends had suffered at the hands of Officer Jones and other Defendants in the past,

he was acutely aware that Officer Jones was just trying to humiliate him again and therefore, Mr.

A. Chandler declined to take the field sobriety test.

34.     Although Mr. A. Chandler was acting like any other upstanding citizen who knows his

rights and who would not succumb to the repeated unwarranted harassment of Officer Jones or

any other officer that abuses the authority entrusted in him, Mr. A. Chandler was nonetheless

arrested by Officer Hollan, who was called on the scene by Officer Jones, because he declined to

take the sobriety test.

35.     Another incident involving the Defendants occurred on May 22, 2007, on 17th and I

Street, at a venue Mr. Hamilton and Mr. D. Chandler were attending. Mr. Hamilton and his

friend, Rashad Jenkins ("Mr. Jenkins"), were parked in front of Mr. D. Chandler's vehicle and

were waiting for Mr. D. Chandler to return to his car.

36.     Mr. Hamilton saw Officer Jones walk up to Mr. D. Chandler's car, reach in the unoccupied vehicle, and take the keys out of Mr. D. Chandler's ignition. This sight was not new to Mr. Hamilton because on September 13, 2006, Officer Jones had reached in Mr. Hamilton's car and proceeded to take possession of Mr. Hamilton's keys from the ignition, despite the fact that Mr. Hamilton was parked legally and standing only a couple feet away from the vehicle.

37.     Officer Jones approached Mr. Hamilton's car and asked Mr. Hamilton to exit his vehicle. It is interesting to note that Officer Jones specifically addressed Mr. Hamilton by his given name prior to asking for any identification.

38.     Without any provocation or notice, Officer Jones told Mr. Hamilton, " third time's the charm" and proceeded to handcuff Mr. Hamilton and take him to his squad car in order for Officer Fetting to conduct a field sobriety test.

39.     On the way to the squad car, Officer Jones spotted Mr. D. Chandler, and again without notice or cause, asked another officer to arrest Mr. D. Chandler.  Only after Mr. D. Chandler was placed in handcuffs was he asked about his car and why the keys were in the ignition.

40.     Mr. Hamilton took the sobriety test and was told by Officer Fetting that he would not be charged with a DUI. Officer Fetting then placed him in a squad car.

41.     Mr. Hamilton had repeatedly told Officer Jones that he had not been drinking and that he had done nothing wrong, but like all the other incidents Officer Jones has had with the Plaintiffs, Officer Jones continued to abuse the power entrusted to him and used it to harass the Plaintiffs.

42.     Before being placed in the squad car, Mr. Hamilton and Mr. D. Chandler saw Officer Jones confiscate Mr. Jenkins' cell phone without giving any reason or notice.  Mr. Jenkins was videotaping what was occurring on his cell phone. The cell phone, which was taping Officer

Jones as he harassed Plaintiffs, has not been seen by Mr. Jenkins or by Plaintiffs since Officer

Jones took it. Although this theft of personal property was complained of by the victims the

Metropolitan Police Department took no action and there is no policy in place to address theft by

Policemen committed in the line of duty due to the gross neglect by Chief Lanier to the great

detriment of Plaintiffs and other helpless citizens.  The court must stop these abuses.

43.     In addition, instead of having a tow truck impound the vehicles owned by Mr. Hamilton

and Mr. D. Chandler, two unknown officers got in Plaintiffs' cars and drove off with them.

44.     Mr. Hamilton and Mr. D. Chandler were driven to the station by Officers Fetting and

Bunnels. When they arrived at the station, several officers, after hearing what happened to them,

told Mr. Hamilton and Mr. D. Chandler to file a complaint, which they later did, against Officer

Jones for harassment.

45.     Furthermore, at no time since the moment they were arrested until the time Mr. Hamilton

and Mr. D. Chandler posted bond, were they ever read their Miranda Rights. These bad illegal

practices are again due to the gross neglect of and indifference to her duties by Ms. Lanier

causing great harm and injury of Plaintiffs and other citizens.

46.     Officer Jones joined by other MPD officers also confronted Plaintiffs on August 24, 2004

in Georgetown, located in downtown DC. Officer Jones pulled over Mr. Hamilton's vehicle

while Mr. Hamilton was following Mr. D. Chandler in his car.  Mr. Jones aided by a battery of

other officers proceeded to publically demean and humiliate Plaintiffs without any identifiable

cause or justification using raw abusive power of the state causing great harm to these private

citizens due again to the neglect of duty by chief Lanier.

47.     Mr. Hamilton was driving a car rented by his uncle. Despite it not being a criminal act

under the D.C. Code, Officer Jones told Mr. Hamilton that it was illegal for him to drive the

rental car because his name was not listed on the insurance contract. Officer Jones directly violated D.C. Mun. Reg. Section 6-A200.

48.     After exiting the vehicle, Officer Jones, without permission, without a warrant or without probable cause, searched all compartments in the vehicle, including a locked and closed trunk that could not be accessed from the interior cabin of the car.

49.     During the incident in its entirety, Officer Jones spoke in a loud, demeaning, and abusive tone and acted very aggressively toward Plaintiffs in direct violation of D.C. Mun. Reg. Section 6-A202.1. Again where was chief Lanier again she neglected her duties to the great harm and injury of Plaintiffs.

50.     Officer Jones then began to direct his tirade toward Mr. D. Chandler when Mr. D. Chandler told Officer Jones that his traffic stop was improper and that Officer Jones was harassing them for no reason He and his fellow officers threatened to arrest plaintiffs.

51.     Officer Jones' yelling finally caused Mr. D. Chandler to ask for Officer Jones' badge number. At which point, Officer Jones did not respond and instead obscured his badge from Mr. D. Chandler's sight and in doing so violated D.C. Mun. Reg. Section 6-A202.8. Again it is reported that this is a common practice among MPD officers with out Chief Lanier taking any action to correct this practice. This neglect of duty enables police officers to inflict abuse upon innocent citizens without recourse in violation of her duty and authority to protect the public from errant police officers.

52.     After making several humiliating statements to Mr. D. Chandler and instructing him to "keep his mouth closed", Mr. D. Chandler responded by saying, "this is discrimination and I will complain".

53.     After illegally searching the car, accusing Plaintiffs of committing crimes that did not

exist and harassing Plaintiffs for no justifiable or excusable reason, Officer Jones retaliated against Mr. D. Chandler for telling Officer Jones that he would complain about his illegal actions by proceeding to place Mr. D. Chandler in handcuffs. Again the police engaged in unlawful behavior without Ms. Lanier doing her duty to protect the public to the harm and injury of plaintiffs.

54.    Officer Jones then forced Mr. D. Chandler into the back of the squad car.

55.    While Mr. D. Chandler was handcuffed and completely vulnerable to any attack, Officer Jones began threatening Mr. D. Chandler by saying, "we can go right here," meaning "we can fight right here." This is totally mindless conduct by a policeman. Ms. Lanier failed in her duty to protect the public including Plaintiffs here to their great harm and injury as a direct result of defendant Lanier's failure to perform her duty.

56.    Plaintiffs were finally released from handcuffs after Officer Jones spoke by cell phone with Mr. D. Chandler and Mr. A. Chandler's father, Professor James P. Chandler, President and Chairman of The Chandler Law Firm, PLLC.

57.    Plaintiffs have all filed claims against Defendants pursuant to D.C. Code § 12- 309.

58.    On June 8, 2007 the charges brought by Defendants, pending against Mr. A. Chandler, were dropped, and Mr. A. Chandler was not prosecuted for his May 31, 2007 arrest.

59.    Officer Jones was subsequently investigated by the Internal Affairs Department ("IAD") for harassing Mr. A. Chandler. The Department made the following finding: Officer Jones made an illegal arrest of Mr. A. Chandler that violated his legal and constitutional rights.

60.    Given the long history AND pattern of illegal activity by Defendants Metropolitan Police Department  we believe and therefore allege that Chief Lanier has personal knowledge of the regular and well known abuses and violations of laws by officers within her department and the

District of Columbia is and has been aware of Officer Jones other officers repeated Constitutional rights violations. But Chief Lanier has averted her head from the conspiracy by other groups of officers who regularly violate the rights of citizens and conspire together to cover up these violations of law. The gross neglect by Ms. Lanier to address these failures and stop the abuses is the direct cause of the continuation of the abuses and the harm which plaintiffs have suffered and continue to suffer in the District of Columbia.

61.    Plaintiffs were not at any time, during the incidents described and at the time of their arrests, in violation of any law nor have they done any offense against the ordinances of the District of Columbia or the statutes of the United States. Defendant Officers did not have any reasonable grounds for believing that Plaintiffs were committing or had committed any offenses.

62.    As a result of the events described above, Plaintiffs have suffered physical injury, pain, severe emotional distress, mental anguish, fear, humiliation, embarrassment and monetary loss.

63.    In making the above stated arrests, Defendant Officers acted willfully, maliciously, and without any excuse or justification whatsoever, in that they knew or should have known that Plaintiffs were at all times acting lawfully.

64.    At the time of Plaintiffs' arrests, it was clearly established as a matter of law that the government cannot arrest an individual without probable cause to do so.

65.    At the time of Plaintiffs' arrests, it was clearly established as a matter of law that the agencies of the District of Columbia are required to comply with its internal regulations, as well as with the statutes and laws of the United States and the District of Columbia.

## CLAIMS FOR RELIEF

Plaintiffs incorporate paragraphs 1 through 65 into each claim set out below as though fully set forth therein.

### COUNT I.    FALSE ARREST

66.    Defendant Officers arrested and initiated prosecution of Plaintiffs, without probable cause to believe Plaintiffs had committed or were about to commit a crime.

67.    Defendant Officers had no good faith or reasonable belief that probable cause existed to arrest Plaintiffs. But in their zeal to cooperate with a wrongdoer they negligently failed to examine the factual basis for their actions to the great harm of plaintiffs.  Chief Lanier took no corrective action in a timely manner and according to information and belief as a result loss her right to terminate bad cops under department contracts with policemen unions.  As a result of the Gross Neglect of Chief Lanier Plaintiffs continue to live under the threat of retaliation by bad cops.

68.    The actions of the Defendants deprived Plaintiffs of their rights under the Fourth Amendment of the United States Constitution to be free of unreasonable search and seizure, as made actionable by 42 U.S.C. § 1982.

69.    Defendant Officers purported to act within the scope of their employment, and to act on behalf of and in the interest of the Defendant District of Columbia, and by and under the direction of chief Lanier when they arrested Plaintiffs without probable cause to believe that Plaintiffs had committed or were about to commit a crime.

70.    The conduct of the Defendant District of Columbia, by and through the actions of its employees, under its control and supervision and acting within the scope of their employment, constitutes false arrest under the common law of the District of Columbia and the United States. And the negligent failure to correct these practices over a period of years cannot be ignored and Ms. Lanier must be called to answer for her neglect.

71.    Defendant District of Columbia is liable for both gross negligence and intentional torts of

14

its employees acting within the scope of their employment.

72.     The actions of Defendants in arresting Plaintiffs constitute false arrest under the laws of the District of Columbia and the United States. As such, Plaintiffs seek damages in the amount of Ten Million Dollars ($10,000,000.00) for the cities gross negligence in correcting these illegal and unconstitutional practices.  Defendant Lanier, Mr. Fenty and the District of Columbia is liable for their failure to recruit, train, supervise, retrain periodically the members of the Metropolitan Police Department.  These failures to terminate errant officers, compounds the risk to citizens when so many officers have such deficient skills, knowledge and competence.  These officials must be held to account in their individual and official capacity.

### COUNT II.   DEFAMATION:  LIBEL AND SLANDER

73.     Defendant Jones negligently and knowingly made false statements, which were published to third persons, to the effect that Mr. A. Chandler was a "known criminal with a long criminal history", and that Mr. A. Chandler "was driving on a suspended license on May 31, 2007." Where was chief Lanier when police officers are testifying falsely in judicial proceedings. She neglected to hold these lying police men accountable for their conduct to the great harm of plaintiffs herein.

74.     At the time Defendant Jones made these malicious defamatory comments, he knew or should have known the statements were false. Defendant Jones' statements about Mr. A. Chandler had the intended effect of seriously damaging Mr. A. Chandler's professional reputation, which has been otherwise outstanding.

75.     Defendant Jones' defamatory actions have directly and proximately caused Mr. A. Chandler severe emotional distress, mental anguish, humiliation, pain and suffering, monetary loss and significantly lowered his reputation and esteem within his community and profession.

76.     Defendant Jones has explicitly stated that he was going to make Mr. A. Chandler pay for

his behavior, demonstrating that he wanted to harm and intimidate and injure Mr. A. Chandler so

that he would not complain to others about Mr. Jones' bad behavior.

77.     None of Defendant Jones' defamatory statements were privileged. No qualified privilege

exists for his statements since Defendant Jones made these false statements with malice and ill

will.

78.     Defendant Jones' statements were made with malice, spite, ill will, vengeance, and

deliberate intent to harm Mr. A Chandler, thereby warranting punitive damages against

Defendant Jones. The failure of Chief Lanier to act to correct Mr. Jones when she was well

aware of Mr. Jones behavior and dishonesty amounts to a gross failure to perform her duty

resulting in great harm to plaintiffs.  Mr. A. Chandler prays for damages in the amount of Ten

Million Dollars ($10,000,000.00).

### COUNT III.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79.     The actions of the Defendants towards Plaintiffs were extreme and outrageous, and

wrongful and reckless,  calculated to cause Plaintiffs severe emotional distress.

80.     Despite knowing Plaintiffs were innocent and without having reasonable basis or belief

or any evidence of probable cause to believe that Plaintiffs had committed or were going to

commit any violations, Defendant Officers recklessly and deliberately, and in direct violation of

the law, acted in the extreme and outrageously when Officer Jones seized Plaintiff and his

belongings. When Officer Jones detained Mr. A. Chandler for hours after his bond had been

posted the action was an extreme abuse following an illegal arrest. Mr.  Jones was seeking to

excite Mr. Chandler into a fight; and when Officer Jones made false statements to the effect that

Mr. A. Chandler was a known criminal with a long criminal history at Ms. Hawkins' MTPD

hearing and at other times when Mr. A. Chandler was present Mr. Jones sought to arouse and

effort at physical retaliation from Mr. Chandler. Mr. Jones failed but Mr. Chandler has a right to

be free from that kind of abuse and threats by a police officer. Ms. Lanier's failure to correct this

kind of police behavior constitutes a neglect of duty to the great harm of plaintiff.

81.     The Defendant MPD Officers purported to act within the scope of their employment and

acted on behalf of and in the interest of the District of Columbia and under the direction of Ms.

Lanier who took now corrective action even though she was fully informed of the premises.

82.     The District of Columbia is liable for the torts of its employees acting with gross

negligence within the scope of their employment.

83.     Defendants actions were the direct and proximate cause of the severe emotional distress

and anguish suffered by the Plaintiffs.

84.     The conduct of Defendant Officers and District of Columbia, by and through the actions

of its employees, which were under its control and supervision, and acting with gross negligence

within the scope of their employment, constitutes wrongful infliction of emotional distress under

the common law of the District of Columbia and the United States. The governments failure to

act and the chief  Lanier failure to initiate any corrective action of the offending police officers

left Plaintiffs with great fear, foreboding and harm.  Therefore, Plaintiffs seek damages in the

amount of One Million Dollars ($1,000,000.00).

### COUNT IV.   VIOLATIONS OF FOURTH AMENDEMENT RIGHTS

85.     Officer Jones' action in searching Plaintiffs' vehicle and trunk without justification,

consent, implied or otherwise, without a warrant and without probable cause was in violation of

Plaintiffs' Fourth Amendment Rights.  Defendant Lanier and the District of Columbia knew and

failed to correct this wrongful behavior by their subordinates for a period of many years.  But she

neglected to undertake corrective action.

86.     Plaintiffs had a reasonable expectation of privacy and to be free of police terrorism in the United States. Chief Lanier was grossly negligent in the performance of her duties. She thereby enabled the defendant policemen to break the law and maintain a reign of terror against the plaintiffs. Officer Jones invaded Plaintiffs privacy and Fourth Amendment Rights by conducting a search of the trunk without any reasonable or good faith belief that probable cause existed to conduct the intrusive search, and the sole purpose of the search was for Officer Jones to continue harassing Plaintiffs.

87.     Defendants again violated Plaintiffs' Fourth Amendment rights when they illegally arrested Plaintiffs and required them to either post and forfeit, or remain incarcerated, despite having no good faith or reasonable belief that probable cause existed to believe Plaintiffs had committed any crimes or to justify prosecuting Plaintiffs.

88.     Because of Defendants actions, Plaintiffs now have arrest records, which will cause professional and personal difficulties for them in the future.

89.     Defendants refused to offer post and forfeit as an option for resolving Plaintiffs arrest with the illegal purpose to punish Plaintiffs for voicing their criticism against the illegal conduct by defendants.

90.     The actions of Officer Jones and other Defendants deprived Plaintiffs of their rights under the Fourth Amendment of the United States Constitution to be free from unlawful searches, arrests and seizures as made actionable by 42 U.S.C. § 1982. Unlawful searches, arrests and seizures for any length of time without legal cause are insufferable and intolerable. Plaintiffs seek damages in the amount of Thirty Million Dollars ($30,000,000.00).

## COUNT V.     VIOLATION OF FIFTH AMENDEMNT EQUAL PROTECTION RIGHTS

91.    The District of Columbia statute § 50-1905 violates the Equal Protection Rights afforded

citizens under the Fifth Amendment of the United States Constitution.

92.    Defendants used DC ST § 50-1905 to discriminate and violate Plaintiffs' Fifth

Amendment Rights to equal protection. The DC ST § 50-190 specifically states," If a person

under arrest refuses to submit to chemical testing as provided in § 50-1902(a) . . . shall revoke

his license or privilege to drive in the District of Columbia if the person is a nonresident for a

period of 12 months; or if the person is without a license to operate a motor vehicle in the

District, the Mayor shall deny to the person the issuance of a license for a period of 12 months

after the date of the alleged violation, subject to review as hereinafter provided."

93.    The statute specifically targets nonresidents of the District of Columbia. There is no

language or provision within the statute that provides such a steep or any similar punishment to

District of Columbia residents. The statute, as written, specifically discriminates against out of

state residents without any constitutionally permissible justification or reason.

94.    Plaintiffs', nonresidents of the District of Columbia, Fifth Amendment Rights under the

United States Constitution were violated by DC ST § 50-1905 as used and enforced by

Defendants, as made actionable by 42 U.S.C. section 1983. As such, Plaintiffs seek Two Million

Dollars ($2,000,000.00) in damages.

### COUNT VI.    VIOLATIONS OF FIFTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS

95.    The District of Columbia maintains a policy, custom or practice of arresting citizens

under DC ST § 50-1902 in contravention of the said statute as written.

96.    The implied consent statute, DC ST § 50-1902, provides that any person who drives in

the District of Columbia shall be deemed to have given his or her consent to two (2) chemical

tests of the person's blood, urine, or breath, for the purpose of determining blood-alcohol content or blood drug-content.

97.     The DC ST § 50-1902 as read has several predicates: 1) the accused must operate a vehicle in the District of Columbia, and it is implied that the vehicle is being operated in the presence of a police officer, 2) the alcohol test cannot be administered until after an arrest of the suspect and 3) the arrest can only be made for violation of some other law aside from DC ST § 50-1902. The statute states, "the tests shall be administered at the direction of a police officer who, having arrested such person for violation of law, has reasonable grounds to believe the person to have been operating or in physical control of a motor vehicle within the District while that person's alcohol concentration is 0.08 grams or more either per 100 milliliters . . . or while under the influence of intoxicating liquor or any drug or any combination thereof, or while the person's ability to operate a motor vehicle is impaired by the consumption of intoxicating liquor[.]"

98.     Defendant District of Columbia, who trained Officer Jones and other MPD Officers, has a policy or custom of arresting individuals, including Plaintiffs, solely because they refused to take the sobriety tests as prescribed under the implied consent statute. The MPD Officer is required to arrest the individual for a violation of some other law aside from the individual allegedly violating DC ST § 50-1902. This statute is still on the books and the custom and practice directed by Chief Lanier continues.

99.     The policy, custom or practice being implemented by the District of Columbia is in direct violation of the Constitution of the United States and the District of Columbia statute as written.

100.    The lack of adequate training and supervision described above leads MPD officers to

frequently use DC ST § 50-1902 as a form of punishment[1], prior to citizens, including Plaintiffs, committing any violations of the law.  This Chief Lanier led practice continues.

101.    Due to the lack of proper training and supervision, MPD officers violate arrestees' Fifth Amendment Rights and it reflects a deliberate indifference on the part of the Defendant District of Columbia and Defendant MPD Officers to the Constitutional Rights of arrestees.

102.    At the time of Plaintiffs' arrests, Defendants including Chief Lanier had actual or constructive knowledge that MPD officers were making arrests without probable cause and making such arrests in contravention of the United States Constitution and the District of Columbia statute, but due their gross negligence failed to take corrective action causing great harm and injury of plaintiffs.

103.    The policy, custom or practice of the Defendants and their failure to adequately train, manage, direct and or supervise its officers, caused Plaintiffs to be deprived of their rights under the Fifth Amendment of the United States Constitution to be free of punishment prior to trial, as made actionable by 42 U.S.C. section 1983. As such, Plaintiffs seek Two Million Dollars ($2,000,000.00) in damages.

---

[1] **DC ST § 50-1905. Test refusal; penalty; incapacitated person; use of evidence:**

(a) If a person under arrest refuses to submit to chemical testing as provided in § 50-1902(a) he shall be informed that failure to submit to such test will result in the revocation of his license or privilege to drive in the District of Columbia if the person is a nonresident. If such person, after having been so informed, still refuses to submit to chemical testing, no test shall be given, but the Mayor, upon receipt of a sworn report of the police officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while the person's alcohol concentration is 0.08 grams of more either per 100 milliliters of blood or per 210 liters of breath or is 0.10 grams or more per 100 milliliters of urine, or while under the influence of intoxicating liquor or any drug or any combination thereof, or while the person's ability to operate a motor vehicle is impaired by the consumption of intoxicating liquor, or while that person's blood, urine, or breath contains any measurable amount of alcohol if the person is under 21 years of age, and that the person had refused to submit to the 2 tests, shall revoke his license or privilege to drive in the District of Columbia if the person is a nonresident for a period of 12 months; or if the person is without a license to operate a motor vehicle in the District, the Mayor shall deny to the person the issuance of a license for a period of 12 months after the date of the alleged violation, subject to review as hereinafter provided.

(c) If the person under arrest refuses to submit to the test evidence of such refusal shall be admissible in any civil or criminal proceeding arising as a result of the acts alleged to have been committed by the person prior to the arrest.

### COUNT VII.  MALICIOUS PROSECUTION

104.    Defendant MPD Officers initiated an unlawful criminal prosecution against Mr. A.

Chandler without having probable cause to believe that Mr. A. Chandler had committed a crime

or was about to commit a crime. Defendants with gross negligence maliciously and illegally

arrested Mr. A. Chandler in order to continue harassing him.

105.    The prosecution against Mr. A. Chandler was terminated in his favor.

106.    Defendants' and all persons who joined in the prosecution of Chandler initiated the

unlawful prosecution with willful, wanton, reckless, and gross negligence and disregard of the

United States Constitution and laws of the District of Columbia  and thereby exposed plaintiffs

to the risk of additional harm and with an oppressive disregard for the rights of the Plaintiffs.

107.    The District of Columbia is liable for the  torts of its employees purporting to act within

the scope of their employment.

108.    The Defendant MPD Officers acted within the scope of their employment, and acted on

behalf of and in the interest of the District of Columbia, when they initiated an unlawful criminal

prosecution against Mr. A. Chandler.

109.    The conduct of the Defendant MPD Officers and Defendant District of Columbia, and the

Chief of Police by and through the action of its employees, which were under its control and

direction and supervision, caused Mr. A. Chandler and Plaintiffs to suffer special injuries as a

direct result of the unlawful arrests, detention and prosecution initiated by Defendants and each

of them individually and officially as they knew chief Lanier would neglect to impose any

discipline upon any of them. As such, Plaintiff seeks damages in the amount of One Million

Dollars ($1,000,000.00) and a permanent injunction against future wrongdoing and official law

breaking.

COUNT VIII          NEGLIGENCE

110.  The conduct of Defendant MPD Officers was a manifestation of a lack of duty owed to the

Plaintiffs, and the acts of negligence committed by Defendant Officers indicates that the MPD

negligently failed to adequately train, supervise, and periodically retrain the Defendants MPD

Officers.  This means that the Chief Lanier's gross failure to do her duty is the cause of Plaintiffs

harm.

111.  Plaintiffs did nothing to contribute to the negligence of the Defendants.

112.  The proximate cause of the Plaintiffs' illegal arrests, the distress, misconduct and

humiliation to which the Plaintiffs' were subjected was caused by the negligent performances of

their assigned duties from Mr. Fenty, Ms. Lanier and the Policemen on the street.  The system

was and is broken.

113.  The Defendants owed the Plaintiffs a duty of care to perform their assigned responsibilities

with due care to insure that Plaintiffs Constitutional and Legal rights are not violated.  Each of

the Defendants breached this duty of care by deviating from the standard of care which was due

and the breach of said duty was the proximate cause of the Plaintiffs' injuries.


**PRAYER FOR RELEIF**

WHEREFORE, Plaintiffs request that this Court,

1. Enter judgment holding Defendants liable to Plaintiffs for damages as pled or in an amount

appropriate to the proof adduced at trial;

2. Enter judgment holding the Defendants liable to Plaintiffs for punitive damages;

3. Enter judgment imposing injunctive relief that:

  1) Bars the Defendants from illegally arresting or incarcerating Plaintiffs without

probable cause; and

2) Orders and Directs Defendants to cease and desist from harassing Plaintiffs in violation of the Constitution and laws of the United States and the laws and regulations of the District of Columbia; and

4. Award Plaintiffs their costs and reasonable attorneys' fees;

5. Order that Defendants retract all false statements they have made in any forum about Plaintiffs and to cease and desist from making any further false comments about Plaintiffs;

6. And such other relief the Court deems just and equitable.

Respectfully submitted,

/s/ _____

James P. Chandler (D.C Bar # 270686)
THE CHANDLER LAW FIRM PLLC
2020 Pennsylvania Ave N.W, Suite 185
Washington, D.C 20006
Counsel for Plaintiffs